Of Counsel:

FUKUNAGA MATAYOSHI CHING & KON-HERRERA, LLP

WESLEY H. H. CHING          2896
JENNIFER C. CLARK           4497
841 Bishop Street, 1200 Davies Pacific Center
Honolulu, Hawaii  96813
Telephone:  (808) 533-4300
Facsimile:   (808) 531-7585
Email:  whc@fmhc-law.com / jcc@fmhc-law.com

LETHER LAW GROUP
KASIE KASHIMOTO, State Bar No. 11195
THOMAS LETHER (*pro hac vice pending*)
1848 Westlake Ave N., Suite 100
Seattle, WA  98109
P: 206-467-5444 / F: 206-467-5544
kkashimoto@letherlaw.com / tlether@letherlaw.com

Attorneys for Plaintiffs UNITED STATES FIRE INSURANCE COMPANY
AND THE NORTH RIVER INSURANCE COMPANY

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES FIRE INSURANCE COMPANY, a foreign insurance company, THE NORTH RIVER INSURANCE COMPANY, a foreign insurance company, | CV<br><br>**COMPLAINT FOR DECLARATORY RELIEF** |
| Plaintiffs, | |
| vs. | |
| PACIFIC COFFEE INC. d/b/a MAUI COFFEE COMPANY, a Hawaii corporation; and MNS LTD., a Hawaii corporation; | |

Defendants.

_____

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiffs United States Fire Insurance Company (hereinafter "USFIC") and The North River Insurance Company (hereinafter "NRIC") submit this Complaint for Declaratory Relief pursuant to 28 U.S.C. § 2201 and Fed.R.Civ.P. 57.

## I.     PARTIES

1.     Plaintiff USFIC is a foreign insurance company organized under the laws of the State of Delaware with its principal place of business in the State of New Jersey. USFIC at all material times has transacted business in the State of Hawaii.

2.     Plaintiff NRIC is a foreign insurance company organized under the laws of the State of Delaware with its principal place of business in the State of New Jersey. NRIC at all material times has transacted business in the State of Hawaii.

3.     Defendant Pacific Coffee Inc. d/b/a Maui Coffee Company ("PCI") is a Hawaii corporation with its principal place of business in the State of Hawaii.

4.     Defendant MNS Ltd. ("MNS") is a Hawaii corporation, with its principal place of business in the State of Hawaii. MNS owns and operates retail stores under the business name "ABC Stores."

## II.     JURISDICTION AND VENUE

5.     Jurisdiction is properly before this Court pursuant to 28 U.S.C. §1332 as complete diversity exists among the parties and the amount in controversy exceeds $75,000.

6.     The Court has jurisdiction over this declaratory judgment action pursuant to 28 U.S.C. § 2201 because there is an actual and justiciable controversy between the parties with respect to the existence of insurance coverage under the policies of insurance issued by Plaintiffs. A judicial determination and declaration of the rights and obligations of the parties is necessary and appropriate at this time because Plaintiffs have no adequate remedy at law which will resolve the current controversy.

7.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because this action involves a dispute over the application of insurance coverage under policies written out of the State of Hawaii, the alleged events and omissions which gave rise to this claim occurred in this district, and because Defendants are subject to this Court's jurisdiction.

## III.     FACTUAL BACKGROUND

8.     This case arises from commercial general liability and commercial umbrella policies of insurance issued by Plaintiffs to PCI and the claims asserted

in the Underlying Lawsuit[1].

9.  The Underlying Lawsuit is a class action filed by Claimants on behalf of coffee farmers that grow coffee in the Kona District of the Big Island of Hawaii, as defined by Hawaii regulations. Claimants allege that PCI and MNS (along with other named coffee supplier and retailer defendants) distribute and/or sell coffee described as "Kona" coffee that does not actually originate from the Kona Region of Hawaii.

10.  Claimants allege that PCI and MNS (and the other named defendants) have flooded the market with counterfeit "Kona" coffee, causing prices for Kona coffee to drop sharply. Claimants further allege that, because the coffee distributed and sold by PCI and MNS as "Kona" coffee tastes like ordinary commodity coffee, consumers have been deceived into believing that Kona coffee is not a special product and are unwilling to pay a premium price for authentic Kona coffee. As a result, Claimants allege that they have lost profits and PCI and MNS have been unjustly enriched.

11.  Claimants allege that authentic Kona coffee can only be grown within 3,800 acres of land located in the Kona District. Claimants further allege that the unique environment in the Kona District results in a coffee with distinctive

---

[1] *Corker, et al. v. Costco Wholesale Corporations, et al.*, United States District Court for the Western District of Washington Case No. 2:19-CV-00290-RSL will be referred to herein as the "Underlying Lawsuit".

qualities that warrants a premium price. According to the Claimants, Kona farmers produce only 2.7 million pounds of authentic Kona coffee beans each year. However, over 20 million pounds of coffee labeled as "Kona" coffee is sold each year. Claimants allege that they would be able to sell authentic Kona coffee at a premium price and earn greater profits but for the alleged actions of PCI and MNS (and the other named defendants).

13.     The pleadings in the Underlying Lawsuit assert that one can determine with high confidence whether coffee is truly grown in the Kona District based on scientific testing that identifies the relative concentration of certain chemical elements that are unique to coffee beans grown in Kona.

14.     Claimants allege that PCI sells a variety of coffee products throughout the United States through its website and through various retail outlets, including the ABC Stores owned by MNS. Claimants further allege that PCI falsely designates the origin of its "Kona" coffee products with prominent placement of "100% KONA" on the front of its packaging and the description of its products on its website and other internet advertising. Claimants allege that the chemical testing conducted on PCI's products show that PCI's designation of Kona as the origin of its products is false.

15.     Claimants allege that PCI's deceptive product descriptions are deliberate and designed to mislead consumers into believing PCI's coffee products

only contain coffee from Kona in order to justify premium prices when PCI's coffee products actually contain ordinary commodity coffee beans. The Claimants further allege that PCI's deceptive marketing, product names and package designs are all intended to trade off the reputation and goodwill of the Kona name.

16.   Claimants allege that MNS sells counterfeit Kona coffee products supplied by PCI and other coffee suppliers throughout the United States. Claimants allege that MNS wrongfully profits from each sale of counterfeit coffee product.

17.   The pleadings in the Underlying Lawsuit describe the alleged conduct by PCI and MNS as "malicious." Claimants further allege that PCI and MNS are sophisticated participants in the premium coffee market and that they may utilize professional coffee buyers to source coffee for their products. Based on this, Claimants assert that PCI and MNS know the true nature of what they are buying and selling.

18.   The Underlying Lawsuit asserts one cause of action against PCI and MNS described as False Designation of Origin, False Advertising and Unfair Competition under Lanham Act § 43(a) (11 U.S.C. § 1125(a)). The Underlying Lawsuit's original complaint alleged that PCI and MNS violated the Lanham Act by falsely designating Kona as the origin of the coffee products they manufacture, distribute and/or sell when such products actually contain beans from other parts of the world. The Underlying Lawsuit's amended complaints add that PCI and MNS

also violated the Lanham by falsely advertising and/or designating the origin of their coffee products in a way that is likely to confuse or deceive consumers as to the source of the coffee products. The Underlying Lawsuit's operative complaint alleges that PCI and MNS' false designation damaged the reputation and goodwill of the Kona name and damaged the market value of authentic Kona coffee.

19.    Claimants seek damages and a permanent injunction restraining PCI and MNS from using Kona in their packaging and/or advertising. As a component of their damages, Claimants seek an award of money to finance a national corrective advertising campaign. Claimants also seek an award of three times their actual damages because PCI and MNS knew the coffee they sold was not actually from Kona. Claimants described this conduct as a deliberate, willful and intentional violation of the Lanham Act. In addition, Claimants allege they are entitled to recover the profits earned by PCI and MNS for coffee products falsely designated as originating from Kona.

20.    Upon receiving notice of the Underlying Lawsuit and the claims asserted against PCI, Plaintiffs opened a claim, initiated their investigation, and USFIC agreed to defend PCI, the named insured under the subject policies, under an express reservation of rights.

21.    Thereafter, MNS tendered a claim for defense and coverage as a purported additional insured under the subject policies. In response to that tender,

USFIC agreed to defend MNS with regard to the Underlying Lawsuit under an express reservation of rights.

22.    Upon information and belief, there is no written contract or agreement between MNS and PCI governing their supplier-retailer relationship. No such contract or agreement has been provided to Plaintiffs.

## IV.    POLICIES OF INSURANCE

### A.    Identification of the Commercial General Liability Policies

23.    USFIC issued multiple commercial general liability policies to PCI which were in effect from September 10, 2014 through September 10, 2019. These policies include the following:

- 5037736581, effective 09/10/14 to 09/10/15 (the "14-15 CGL Policy")
- 5038349265, effective 09/10/15 to 09/10/16 (the "15-16 CGL Policy")
- 5038390089, effective 09/10/16 to 09/10/17 (the "16-17 CGL Policy")
- 5038472043, effective 09/10/17 to 09/10/18 (the "17-18 CGL Policy")
- 5038555095, effective 09/10/18 to 09/10/19 (the "18-19 CGL Policy")

These policies are hereinafter collectively referred to as the "CGL Policies".

24.    Each of the CGL Policies has a $1,000,000 per person or organization limit for Personal and Advertising Injury, $1,000,000 per occurrence limit for Bodily Injury and Property Damage Liability, a $2,000,000 general aggregate limit, and include the terms, conditions and exclusions set forth below.

### B.    Provisions of the Commercial General Liability Policies

25.    The CGL Policies contain the following insuring agreement for

Bodily Injury and Property Damage liability ("Coverage A"):

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1.  Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory.

**(2)** The "bodily injury" or "property damage" occurs during the policy period.

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily Injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

CG 00 01 12 07

26. The CGL Policies contain the following Coverage A exclusions:

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely

for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"' and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

[…]

**o.  Personal and Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury."

[…]

**q.  Distribution Of Material In Violation Of Statutes**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), including any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments

> and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

CG 00 01 12 07, as modified by CG 00 68 05 09

27. The CGL Policies contain the following insuring agreement for Personal and Advertising Injury ("Coverage B"):

### COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless

explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

CG 00 01 12 07

28.   The CGL Policies contain the following Coverage B exclusions:

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

**b. Material Published With Knowledge of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To The Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

[…]

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages the insured would have had in the absence of the contract or agreement.

**f.   Breach of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g.   Quality Or Performance of Goods – Failure To Conform to Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement."

[…]

**i.   Infringement of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.  Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

[…]

**l.   Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in

your e-mail address, domain name or meta tags, or any other similar tactics to mislead another's potential customers.

[…]

**p. Distribution Of Material In Violation Of Statutes**

"personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), including any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

CG 00 01 12 07, as modified by CG 00 68 05 09

29. The CGL Policies contain the following Additional Insured Endorsement:

## ADDITIONAL INSURED – VENDORS

[…]

## SCHEDULE

| Name of Additional Person(s) or Organization(s) (Vendor) | Your Products |
|---|---|
| MNS LTD.<br>766 POHUKAINA STREET<br>HONOLULU, HI 96813 | SALES:      $50.000<br>PREMIUM:    $6. |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

[…]

**A. Section II – Who is An Insured** is amended to include as an additional insured any person(s) or organization(s) (referred to below as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusions:

**1.** The insurance afforded the vendor does not apply to:

   **a.** "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

   **b.** Any express warranty unauthorized by you;

   **c.** Any physical or chemical change in the product made intentionally by the vendor;

   **d.** Repackaging, except when unpacked solely for

17

the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

**e.** Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

**f.** Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

**g.** Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

**h.** "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

> **(1)** The exceptions contained in Sub-paragraphs **d.** or **f.**; or
>
> **(2)** Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

**2.** This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredients, part or container, entering into, accompanying or containing such products.

CG 20 15 07 04

30. The CGL Policies contain the following provisions regarding an

insured's duties in event of a loss:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

[…]

**2.   Duties In The Event of Occurrence, Offense, Claim Or Suit**

   **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   **(1)** How, when and where the "occurrence" or offense took place;
   **(2)** The names and addresses of any injured persons and witnesses; and
   **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

   **b.** If a claim is made or "suit" is brought against any insured, you must:

   **(1)** Immediately record the specifics of the claim or "suit" and the date received; and
   **(2)** Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   **c.** You and any other involved insured must:

   **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
   **(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

CG 00 01 12 07

31.    The CGL Policies contain the following definitions that are applicable

to the foregoing provisions:

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.   The words "we", "us" and "our" refer to the company providing this insurance.

The word "Insured" means any person or organization qualifying as such under Section **II** - Who Is An Insured. […]

**SECTION V - DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

    **a.** Notices that are published include material placed on the internet or on similar electronic means of communication; and

    **b.** Regarding websites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

[…]

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these.

[…]

**9.** "Insured contract" means:

    […]

    **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

[…]

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **a.** False arrest, detention or imprisonment;

    **b.** Malicious prosecution;

    **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, or material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

[…]

**17.** "Property damage" means:

**a.** physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

[…]

**20.** "Your product"

**a.** means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;
**(b)** Others trading under your name; or
**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** includes:

        **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

        **(2)** The providing of or failure to provide warnings or instructions.

    **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

CG 00 01 12 07

## C.   <u>Identification of the Umbrella Policies</u>

32.   NRIC issued multiple commercial umbrella policies to PCI which were in effect from September 10, 2014 through September 10, 2019. These policies include the following:

- 5238004653, effective 09/10/14 to 09/10/15 (the "14-15 Umbrella Policy")
- 5238029169, effective 09/10/15 to 09/10/16 (the "15-16 Umbrella Policy")
- 5238045774, effective 09/10/16 to 09/10/17 (the "16-17 Umbrella Policy")
- 5238068211, effective 09/10/17 to 09/10/18 (the "17-18 Umbrella Policy")
- 5238087579, effective 09/10/18 to 09/10/19 (the "18-19 Umbrella Policy")

The above-referenced excess policies are hereinafter collectively referred to as the "Umbrella Policies".

33.   The Umbrella Policies provide excess coverage over the CGL Policies with limits up to $1,000,000 per occurrence, $1,000,000 aggregate for Personal Advertising Injury, and $1,000,000 General Aggregate.

34.    The Umbrella Policies apply to covered liability in excess of the CGL

Policies, subject to the terms and provisions set forth in the Umbrella Policies.

**D.     Provisions of the Umbrella Policies**

35.    The Umbrella Policies contain the following pertinent provisions with

regard to who is an insured:

> **III.    WHO IS AN INSURED**
> […]
>> B.  Each of the following is also an Insured:
> […]
>>> 5.  any person, organization, trust, or estate that has obligated you by an "Insured Contract" to provide the Insurance that is afforded by this policy, but this policy applies.
>>>
>>>> a.  only up to the policy limits required by the "Insured Contract", subject to the limits of this policy; and
>>>> b.  only with respect to "Bodily Injury", "Property Damage" or "Personal and Advertising Injury" that occurs subsequent to the time you enter into the "Insured Contract"; and
>>>> c.  only with respect to liability arising out of "Your Work", "Your Product" or property owned or used by you, or with respect to other liability arising out of your negligence.
>> […]
>>> 9.  any person, organization, or trust, other than an additional insured, included as an insured in the "Underlying Insurance".

FM 101.0.1108 08 05

36.    The Umbrella Policies contain the following insuring agreement and defense settlement provisions:

## I. COVERAGE – INSURING AGREEMENT

A. We will pay on behalf of the insured those sums in excess of the "Retained Limit" which the insured by reason of liability imposed by law, or tort liability assumed by the insured under an "Insured Contract" entered into prior to the "Occurrence", shall become legally obligated to pay as damages because of "Bodily Injury", "Property Damage" or "Personal and Advertising Injury". We will also pay on behalf of the insured those sums in excess of the "Retained Limit" which the insured becomes legally obligated to pay as a "Covered Pollution Cost or Expense".

However, the amount we pay for damages, or damages and a "Covered Pollution Cost or Expense", is limited as described in SECTION V. LIMITS OF INSURANCE.

B. With respect to "Bodily Injury" and "Property Damage":

1. This insurance applies only if:

   a. the "Bodily Injury" or "Property Damages" is caused by an "Occurrence" that occurs in the coverage territory during the Policy Period stated in item 2. Of the Declarations; and

   b. prior to the Policy Period, no insured listed under paragraph A. or B. of SECTION III., WHO IS AN INSURED, and no "Employee" authorized by you to give or receive notice of an "Occurrence" or claim, knew that the "Bodily Injury" or "Property Damage" had occurred, in whole or in part. If such a listed

Insured or authorized "Employee" knew, prior to the Policy Period, that the "Bodily Injury" or "Property Damage" occurred, then any continuation, change, or resumption of such "Bodily Injury" or "Property Damage" during or after the Policy Period will be deemed to have been known prior to the Policy Period and therefore not occurring during the Policy Period.

2. "Bodily Injury" or "Property Damage" which occurs during the Policy Period stated in item 2. Of the Declarations and was not, prior to the Policy Period, known to have occurred by any Insured listed under paragraph A. or B. of SECTION III., WHO IS AN INSURED or any "Employee" authorized by you to give or receive notice of an "Occurrence" or a claim, includes any continuation, change or resumption of that "Bodily Injury" or "Property Damage" after the end of the Policy Period.

3. "Bodily Injury" or "Property Damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under paragraph A. or B. of SECTION III., WHO IS AN INSURED or any "Employee" authorized by you to give or receive notice of an "Occurrence" or claim:

   a. reports all, or any part, of the "Bodily Injury" or "Property Damage" to us or any other Insurer;
   b. receives a written or verbal demand or claim for damages because of the "Bodily Injury" or "Property Damage"; or
   c. becomes aware of any other means that "Bodily Injury" or "Property Damage" has occurred or has begun to occur.

4. Damages because of "Bodily Injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "Bodily Injury".

C. With respect to "Personal and Advertising Injury", this insurance applies only if the "Personal and Advertising Liability" is caused by an "Occurrence" committed in the coverage territory during the Policy Period stated in item 2. Of the Declarations.

[…]

## II. DEFENSE SETTLEMENT

A. We will have the right and duty to defend the Insured against any "Suit" seeking damages, or damages and "Covered Pollution Cost or Expense", covered by the terms and conditions of this policy, even if the allegations are groundless, false or fraudulent, when:

1. the applicable limits of the "Underlying Insurance" and "Other Insurance" have been exhausted by payment of judgements or settlements; or
2. damages, or damages and "Covered Pollution Cost or Expense", are sought which are not covered by the terms and conditions of "Underlying Insurance" or "Other Insurance".

[…]

D. In those circumstances where paragraph A. above does not apply, we will have the right but not the obligation to investigate, negotiate, settle or defend any claim or "Suit" brought against, or applicable to, any insured.

We will have the right and opportunity but not the obligation to associate and participate with the Insured or any provider of "Underlying Insurance" or "Other Insurance" in the investigation, negotiation, settlement or defense of any claim or "Suit" reasonably likely to involve this policy.

If we exercise such rights, we will do so at our own expense.

E. We will not defend any "Suit" after we have exhausted by payment of settlements or judgements the applicable Limits of Insurance.

F. If we are prevented by law or statute from complying with SECTION II. DEFENSE SETTLEMENT of this policy, we will reimburse the insured for any expense incurred with our prior written consent.

FM 101.0.1108 08 05

The 15-16 Umbrella Policy, 16-17 Umbrella Policy, 17-18 Umbrella Policy and 18-19 Umbrella Policy contain the following amendment to the Insuring Agreement by endorsement:

Paragraphs B.1.b., B.2. and B.3. of Section I **COVERAGE – INSURING AGREEMENT** are amended to delete reference to paragraph B. of Section III. WHO IS AN INSURED.

FM 101.0.2381 08 08

37. The Umbrella Policies exclude coverage for **Expected or Intended Injury and Contractual Liability** under the same or similar language contained in the CGL Policies with regard to Coverage A (bodily injury and property damage). The Umbrella Policies also exclude "Personal and Advertising Injury" coverage for **Knowing Violation of Rights of Another, Material Published with Knowledge of Falsity, Material Published Prior to Policy Period, Contractual Liability, Quality or Performance of Goods – Failure to Conform to**

**Statements, Infringement of Copyright, Patent, Trademark Or Trade Secret**

and **Unauthorized use of Another's Name or Product** under the same or similar

language contained in the CGL Policies with regard to Coverage B.

38.   The Umbrella Policies also contain the following exclusions:

## VII.  EXCLUSIONS

This policy does not apply to:

[…]

### O. PROFESSIONAL SERVICES

"Bodily Injury" or "Property Damage" or "Personal and Advertising Injury" due to the rendering or failure to render any professional service. This includes but is not limited to:

1.  Legal, accounting or advertising services;
2.  Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

[…]

### V. VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, PHONE CALLS, OR OTHER METHODS OF SENDING MATERIAL OR INFORMATION

This policy does not apply to "Bodily Injury" or "Property Damage", or "Personal and Advertising Injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

1. The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;
2. The CAN-SPAM Act of 2003, including any amendment of or addition to such law;
3. The Fair Credit Reporting Act (FCRA), including any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or
4. Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

FM 101.0.1108 08 05, as modified by FM 101.0.2196 06 11

39.    The Umbrella Policies contain the following provisions regarding an insured's duties in event of a loss:

**IX.    CONDITIONS**
[…]
**G. DUTIES IN THE EVENT OF OCCURRENCE, CLAIM OR SUIT**

1. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   a. How, when and where the "occurrence" or offense took place;
   b. The names and addresses of any injured persons and witnesses; and

  c. The nature and location of any injury or damage arising out of the "occurrence" or offense.

  This requirement applies only when the "Occurrence" is known to:

[…]

  d. an "Executive Officer" or insurance manager, if you are a corporation; or

[…]

2. If a claim or "Suit" is brought against any insured that is likely to involve this policy, you must:

  a. Immediately record the specifics of the claim or "suit" and the date received; and;

  b. see to it that we are notified as soon as practicable.

  c. The nature and location of any injury or damage arising out of the "occurrence" or offense.

  This requirement will not be considered breached unless the breach occurs after such claim or "Suit" is known to:

[…]

  d. an "Executive Officer" or insurance manager, if you are a corporation; or

[…]

3. You and any other involved insured must:

  a. immediately send us copies of any demands, notices, summonses or legal papers received in  connection with the claim or "suit";

  b. authorize us to obtain records and other information;

  c. cooperate with us in the investigation or settlement of the claim or defense against the "Suit"; and

    d.  assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury, damage or "Covered Pollution Cost or Expense" to which this insurance may also apply.

   4.  No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

FM 101.0.1108 08 05

   40.  The Umbrella Policies contain the following provisions with regard to

Loss Payments:

### IX. CONDITIONS
[…]
### J. LOSS PAYMENTS

1. We are liable for payment under this policy for any one "Occurrence" only when the amount of the "Retained Limit" with respect to such "Occurrence" has been paid.

2. If we are obliged to indemnify the Insured for any payment of judgments or settlements, the Insured must make a written claim within 12 months of:

    a.  actually paying any amount in excess of the "Retained Limit"; or
    b.  the Insured's liability being made certain by

      (1) the final judgment of a trial; or
      (2) the written agreement of the Insured, the claimant and us.

If any later payments are made by the Insured for the same "Occurrence", written claim for these payments must likewise be made. We will reimburse you for these payments within 30 days of confirming that they are payable by this policy.

3. The Insured will reimburse us promptly for any amount of judgments and settlements paid on behalf of the Insured that is within the Self-Insured Retention.

FM 101.0.1108 08 05

41.   The Umbrella Policies contain the following definitions that are applicable to the foregoing provisions:

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.  The words "we", "us" and "our" refer to the company providing this insurance.

The word "Insured" means any person or organization qualifying as such under Section III – WHO IS AN INSURED.
[…]
**IV. DEFINITIONS**

**"Advertisement"** means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

For the purposes of this definition:

1. Notices that are published include material placed on the   internet or on similar electronic means of communication;    and

2.  Regarding websites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**"Bodily injury"** means bodily injury, sickness, disease, disability, shock, mental anguish, mental injury or humiliation sustained by a person, including death resulting from any of these at any time.

[…]

**"Insured Contract"** means:

[…]

6.  That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "Bodily Injury" or "Property Damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement

[…]

**"Occurrence"** means:

1.  with respect to "Bodily Injury" or "Property Damage", an  accident, including continuous or repeated exposure  to substantially the same general harmful conditions  that  results  in "Bodily Injury" or "Property Damage" that is not expect or intended by the insured.

    All damages, or damages and "Covered Pollution Cost or Expense", that arise from continuous  or  repeated  exposure  to substantially the same general conditions are considered to arise from one "Occurrence".

2.  with respect to "Personal and Advertising Injury", an offense arising out of your business.

All damages that arise from exposure to the same act, publication or general conditions are considered to arise from one "Occurrence" regardless of:

a. the frequency of repetition;
b. the number, kind and type of media used; or
c. the number of claimants.

**"Other Insurance"** means:

1. any insurance policy affording coverage to any Insured for damages or "Covered Pollution Cost or Expense"     for which this policy also provides coverage; or
2. any type of Self-Insurance or other mechanism by which an insured arranges funding of legal liabilities for which this policy also provides coverage;

"Other Insurance" does not include:

1. "Underlying Insurance"; or
2. any insurance policy purchased expressly to apply in excess of the insurance afforded by this policy;

**"Personal and advertising injury"** means injury, including consequential "Bodily Injury", arising out of one or more of the following offenses:

1. False arrest, detention or imprisonment;
2. Malicious prosecution;
3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

4. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

5. Oral or written publication, in any manner, or material that violates a person's right of privacy;

6. The use of another's advertising idea in your "Advertisement";

7. Infringing upon another's copyright, trade dress or slogan in your "Advertisement"; or

8. discrimination in violation of a federal or state civil rights law claimed by a natural person unless such insurance thereof is prohibited by law.

[…]

**"Property damage"** means:

1. Physical injury to tangible property, including all resulting    loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

[…]

**"Retained Limit"** means:

1. with respect to any "Occurrence" that is covered by "Underlying Insurance" or "Other Insurance", the total of the applicable limits of "Underlying Insurance" and "Other Insurance"; or

2. with respect to any "Occurrence" that is not covered by "Underlying Insurance" or "Other Insurance", the amount of  the Self-Insured Retention stated in item  4.(f)  of  the Declarations

[…]

**"Underlying Insurance"** means:

1. the policies and/or Self-Insurance listed in Schedule A – Schedule of Underlying Insurance;
2. the policies and/or Self-Insurance listed in any Supplemental Schedules of Underlying Insurance attached to this Policy by endorsement; and.
3. any other policies and/or Self-Insurance for newly acquired or formed organizations.

[…]

**"Your product"** means:

1. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   a. You;
   b. Others trading under your name; or
   c. A person or organization whose business or assets you have acquired; and

2. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

1. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and
2. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

**"Your work"** means:

1. Work or operations performed by you or on your behalf; and
2. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

1. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and
2. The providing of or failure to provide warnings or instructions.

FM 101.0.1108 08 05

42.   Plaintiffs reserve the right to assert any other language from the CGL Policies or the Umbrella Policies that may be potentially applicable to this matter.

43.   In accordance with applicable Hawaii law, Plaintiffs now bring this claim for Declaratory Judgment seeking a judicial determination that they do not owe any defense or indemnity obligations to PCI and MNS for some or all of the claims asserted against them in the Underlying Lawsuit.

## V.   NO COVERAGE IS AVAILABLE TO PCI AND MNS UNDER THE CGL POLICIES

44.   Plaintiffs reassert paragraphs 1 through 43 and incorporate the same as though fully stated herein.

45.   Under Coverage A, the CGL Policies provide coverage for "bodily injury" and "property damage" caused by an "occurrence", as those terms are defined, provided that any such "bodily injury" or "property damage" occurs

during the policy period and the insured did not know, in whole or in part, about the alleged "bodily injury" or "property damage" prior to the inception of any applicable policy period.

46.    There is an actual and justiciable controversy as to whether the claims against PCI and MNS involve claims for "bodily injury" or "property damage" as those terms are defined by the CGL Policies.

47.    There is an actual and justiciable controversy as to whether of the claims asserted against PCI and MNS involve an "occurrence" as that term is defined by the CGL Policies.

48.    There is an actual and justiciable controversy as to whether any "bodily injury" or "property damage" occurred during any of the applicable policy periods.

49.    There is an actual and justiciable controversy as to whether PCI and MNS had knowledge, in whole or in part, of any alleged "property damage" prior to the inception of one or more of the CGL Policies' policy periods.

50.    The CGL Policies only provide additional insured coverage to persons or entities named in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of PCI's coffee products.

51.    There is an actual and justiciable controversy as to whether the Underlying Lawsuit alleges MNS is liable for "bodily injury" or "property

damage" arising out of PCI's coffee products.

52.   There is an actual and justiciable controversy as to whether MNS is entitled to a defense or any coverage as an additional insured for the claims asserted in the Underlying Lawsuit under the terms of the CGL Policies.

53.   The CGL Policies' exclude additional insured coverage for an additional insured's failure to make such inspections, adjustments, tests or servicing as the additional insured has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of PCI's coffee products.

54.   There is an actual and justiciable controversy as to whether MNS' liability arises out of their failure to make such inspections, adjustments, tests or servicing that MNS agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of PCI's coffee products.

55.   Pursuant to the CGL Policies, coverage is excluded for "bodily injury" or "property damage" expected or intended from the standpoint of the insured.

56.   There is an actual and justiciable controversy as to whether PCI and MNS expected or intended any alleged "bodily injury" or "property damage".

57.   Pursuant to the CGL Policies, coverage is excluded for "bodily injury", "property damage", and "personal and advertising injury" for which the

insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement that is not an "insured contract".

58.    There is an actual and justiciable controversy as to whether PCI and MNS are obligated to pay damages for alleged "bodily injury", "property damage", or "personal and advertising injury" by reason of the assumption of liability in a contract or agreement.

59.    Pursuant to the CGL Policies, coverage is excluded for "bodily injury", "property damage", and "personal and advertising injury" arising out any act or omission that violates or is alleged to violate statutes that address the distribution of material or information, as described above.

60.    There is an actual and justiciable controversy as to whether any of PCI and MNS' alleged liability for "bodily injury", "property damage", or "personal and advertising injury" arose out of the violation of statues addressing the distribution of material or information, as described above.

61.    Under Coverage B, the CGL Policies provide coverage for "personal and advertising injury", as that term is defined, caused by an offense arising out of an insured's business that was committed during the CGL Policies' policy periods.

62.    There is an actual and justiciable controversy as to whether the claims against PCI and MNS involve claims for alleged "personal and advertising injury" as that term is defined by the CGL Policies.

63.   There is an actual and justiciable controversy as to whether PCI and MNS' alleged "personal and advertising injury" liability was caused by an offense committed during any of the CGL Policies' policy periods.

64.   Pursuant to the CGL Policies, coverage is excluded for "personal and advertising injury" caused by an insured with the knowledge that the act would violate the rights of another.

65.   There is an actual and justiciable controversy as to whether PCI and MNS knew that their respective acts would violate the rights of another and inflict "personal and advertising injury".

66.   Pursuant to the CGL Policies, coverage is excluded for "personal and advertising injury" arising out of an insured's written publication of material if done by the insured with knowledge of its falsity.

67.   There is an actual and justiciable controversy as to whether PCI's and MNS' alleged liability for "personal and advertising injury" arises out of PCI's and MNS' written publication of material done with knowledge of its falsity.

68.   Pursuant to the CGL Policies, coverage is excluded for "personal and advertising injury" arising out of written publication of material whose first publication took place before the beginning of the CGL Policies' policy periods.

69.   There is an actual and justiciable controversy as to whether PCI's and MNS' alleged liability for "personal and advertising injury" arises out of PCI's and

MNS' written publication of material whose first publication took place before the beginning of the CGL Policies' policy periods.

70.    Pursuant to the CGL Policies, coverage is excluded for "personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in an insured's "advertisement[s]".

71.    There is an actual and justiciable controversy as to whether PCI's and MNS' alleged liability for "personal and advertising injury" arises out of the failure of goods, products or services to conform with any statement of quality or performance made in PCI's and MNS' "advertisement".

72.    Pursuant to the CGL Policies, coverage is excluded for "personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement[s]".

73.    There is an actual and justiciable controversy as to whether PCI's and MNS' alleged liability for "personal and advertising injury" arises out of a breach of contract.

74.    Pursuant to the CGL Policies, coverage is excluded for "personal and advertising injury" arising out of the unauthorized use of another's name or product in an insured's e-mail address, domain name or meta tags, or any other similar tactics to mislead another's potential customers.

75.   There is an actual and justiciable controversy as to whether PCI and MNS' alleged liability for "personal and advertising injury" arises out of the unauthorized use of another's name or product in PCI or MNS' e-mail address, domain name or meta tags, or any other similar tactics to mislead another's potential customers.

76.   Plaintiffs reserve the right to assert any other exclusions or grounds for which coverage for the claims against PCI and MNS may be excluded under the CGL Policies.

## VI.   NO COVERAGE IS AVAILABLE TO PCI AND MNS UNDER THE UMBRELLA POLICIES

77.   Plaintiffs reassert paragraphs 1 through 76 and incorporate the same as though fully stated herein.

78.   The Umbrella Policies contain insuring agreement and exclusionary provisions which are the same or substantively similar to provisions contained in the CGL Policies. There are actual and justiciable controversies with regard to the application of those provisions to the claims asserted in the Underlying Lawsuit for the reasons set forth above.

79.   The Umbrella Policies provide that any organization included as an insured in the CGL Policies, other than an additional insured, qualifies as an Insured under the Umbrella Policies.  The Umbrella Policies further provide that any organization that has obligated PCI to provide the coverage afforded by the

Umbrella Policies under an "Insured Contract" is an Insured under the Umbrella Policies, but only with respect to covered injury or damage that occurred after the insured contract was entered into and with respect to liability arising out of PCI's work or product or other liability arising out of PCI's negligence.

80.    There is an actual and justiciable controversy as to whether MNS qualifies as an Insured entitled to any coverage under the Umbrella Policies.

81.    There is an actual and justiciable controversy as to whether MNS qualifies as an Insured entitled to any coverage under the Umbrella Policies by virtue of its status under the CGL Policies.

82.    There is an actual and justiciable controversy as to whether MNS has obligated PCI to provide MNS coverage afforded under the Umbrella Policies under an "Insured Contract."

83.    There is an actual and justiciable controversy as to whether MNS is liable for covered injury or damage that occurred after any Insured Contract with PCI was entered into.

84.    There is an actual and justiciable controversy as to whether MNS is liable for covered injury or damage arising out of PCI's work, product, or other negligence.

85.    The Umbrella Policies only provide coverage, if at all, for liability in excess of any other collectible insurance available to an insured.

86.   There is an actual and justiciable controversy as to whether any covered liability exceeds other collectible insurance available to PCI and/or MNS.

87.   Plaintiffs reserve the right to assert any other exclusions or grounds for which coverage for the claims against PCI and MNS may be excluded under the Umbrella Policies.

## VII.   CAUSE OF ACTION FOR DECLARATORY RELIEF

88.   Plaintiffs reassert paragraphs 1 through 87 and incorporate the same as though fully set forth herein.

89.   Actual and justiciable controversies exist as to whether any defense or coverage is owed to PCI and/or MNS under the CGL Policies and the Umbrella Policies in regard to the claims asserted against PCI and MNS in the Underlying Lawsuit.

90.   Pursuant to and in accordance with 28 U.S.C. § 2201, Plaintiffs request that the Court grant declaratory relief in favor of Plaintiffs and enter a judicial determination that Plaintiffs do not have an obligation to provide a defense to PCI and MNS in regard to the claims asserted against PCI and MNS in the Underlying Lawsuit under the CGL Policies and the Umbrella Policies.

91.   Actual and justiciable controversies exist as to whether any indemnity coverage is available to PCI or MNS under the CGL Policies and the Umbrella Policies in regard to the claims asserted against PCI and MNS in the Underlying

Lawsuit.

92. Pursuant to and in accordance with 28 U.S.C. § 2201, Plaintiffs request that the Court grant declaratory relief in favor of Plaintiffs and enter a judicial determination that Plaintiffs do not have an obligation to provide any indemnity coverage to PCI and MNS in regard to the claims asserted against PCI and MNS in the Underlying Lawsuit under the CGL Policies and the Umbrella Policies.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, having alleged the foregoing, now pray for the following relief:

1. For a declaration of the rights and obligations of the parties hereto under the CGL Policies and the Umbrella Policies.

2. For a declaration that Plaintiffs have no duty to defend PCI and MNS under the CGL Policies and the Umbrella Policies.

3. For a declaration that Plaintiffs have no duty to indemnify PCI and MNS under the CGL Policies and the Umbrella Policies.

4. For attorney fees, interest and costs allowed by applicable law.

5. For other and further relief as the Court deems just and equitable.

DATED this 9th day of October, 2020.

LETHER LAW GROUP

*/s/ Kasie Kashimoto*
Kasie Kashimoto, State Bar No. 11195
Thomas Lether (*pro hac vice pending*)
1848 Westlake Ave N., Suite 100
Seattle, WA  98109
P: 206-467-5444 / F: 206-467-5544
kkashimoto@letherlaw.com
tlether@letherlaw.com
*Counsel for Plaintiffs*


DATED:  this 9th day of October, 2020.

MATAYOSHI CHING & KON-HERRERA, LLP

*/s/ Wesley H. H. Ching*
WESLEY H. H. CHING, State Bar No. 2896
*/s/ Jennifer C. Clark*
JENNIFER C. CLARK, State Bar No.  4497
841 Bishop Street, 1200 Davies Pacific Center
Honolulu, Hawaii 96813
P: (808) 533-4300/F: (808) 531-7585
whc@fmhc-law.com
jcc@fmhc-law.com
*Counsel for Plaintiffs*